The People of the State of New York ex rel. Village
of South Glens Falls, Respondent, v. Public
Service Commission, Second District, Defendant,
and United Gas, Electric Light and Fuel Com-
pany, Appellant.

Gas companies — public service commission — South Glens
Falls (village of) — contract of gas company to furnish gas to
inhabitants of municipality at fixed rate for term of years —
increase of such rates by company on the ground that they
have become insufficient and confiscatory owing to increased
cost of production — power of public service commission to
regulate such rates.

.1. There is a distinction between a contract made by a gas com-
pany to furnish a municipality *itself* with light and the terms and
conditions upon which a municipality grants a franchise to furnish
gas to its *inhabitants*. In the first instance the arrangement may
be a contract pure and simple protected by the Constitution both
federal and state from subsequent abrogation even by the legislature
unless such power be reserved. But the regulations regarding rates
which municipalities may impose in granting licenses or permission
to use its streets by public service corporations cannot be said to
form contracts beyond the inherent police power of the legislature to
modify for the public welfare.

2. In September of 1900 the village of South Glens Falls granted
to the defendant company the right and power to use the streets
within the village for the purpose of maintaining pipes and necessary
feeders for lighting, fuel and other purposes for which gas may be
used, for the term of fifty years to be furnished at a certain limited
compensation. In August of 1917 the gas company increased its
rate. Thereupon the village made complaint under section 71 of
the Public Service Commissions Law (Cons. Laws, ch. 48) asking the
commission for the second district to investigate the case and pro-
hibit and restrain the gas company from raising its rate above that
originally fixed by its license. It appeared that the cost of furnishing
gas had during the past few years very largely increased. The only
question presented was whether the franchise is such a binding
contract that it could not be abrogated in any way by the gas com-
pany or by the public service commission. The latter body determined
that it had power to regulate the rate to be charged for gas irrespective

of the franchise and dismissed the complaint. The Appellate Division reversed the order of the commission and decided in effect that the public service commission had no power over the matter and granted the demand of the village that the company should be prohibited from charging more than the rate fixed in 1900. *Held, first,* that the legislature under the circumstances mentioned has the power to regulate the price of gas; *second,* that it has conferred that power on the public service commission. (Pub. Serv. Com. L. § 66, subd. 5; § 72.) (*Matter of Quinby* v. *Public Service Commission,* 223 N. Y. 244, distinguished.)

*People ex rel. Vil. of South Glens Falls* v. *Public Service Commission,* 185 App. Div. 912, reversed.

(Argued November 12, 1918; decided January 7, 1919.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered September 18, 1918, which reversed, on certiorari, a determination of the public service commission, second district, dismissing the relator's complaint against the United Gas, Electric Light and Fuel Company, and referred the matter back to the commission for action thereon in accordance with the prayer of the complaint.

The facts, so far as material, are stated in the opinion.

*Erskine C. Rogers* for appellant. The legislature has paramount and supreme rate-making power, especially in the matter of gas rates, where there is no constitutional restriction. (*Matter of Quinby,* 223 N. Y. 261; *R. C. G. L. Co.* v. *Town of Middletown,* 59 N. Y. 228; *People ex rel. N. Y. & N. S. T. Co.* v. *P. S. Comm.,* 175 App. Div. 872; *People ex rel. S. S. T. Co.* v. *Wilcox,* 196 N. Y. 212.) The legislature intended to delegate to the public service commission its undoubted power to permit an increase of a gas rate beyond that agreed upon between a gas company and the local authorities in a franchise. (*Village of Saratoga Springs* v. *Saratoga Gas Co.,* 191 N. Y. 123; *People ex rel. N. Y. Ry. Co.* v. *P. S. Comm.,* 181 App. Div. 338.) The village exceeded its grant of power

by the legislature by exacting as a condition to granting the franchise a fixed and arbitrary maximum rate for a period of fifty years. The village had no rate-making power at all. (*Vil. of Saratoga Springs* v. *Saratoga Gas Co.*, 191 N. Y. 149.) The legislature used the word " reasonable " in section 61, Transportation Corporations Law, as limiting the authority of the municipality to make any regulation or fix any rate that was unfair or confiscatory. (*Wilcox* v. *Consolidated Gas Co.*, 212 U. S. 19; *Matter of Rebecchi*, 51 Misc. Rep. 403; *Richman* v. *Consolidated Gas Co.*, 114 App. Div. 216.)

*L. B. McKelvey* for respondent. The public service commission has no other power in reference to rates fixed by agreement with the local authorities than to enforce adherence to those rates. (*Matter of Quinby*, 223 N. Y. 244; *Wilcox* v. *Richmond L. & R. R. Co.*, 142 App. Div. 14; 202 N. Y. 515.) The legal nature of a franchise granted by a municipality to a common carrier is the same as that granted to a transportation corporation, although the power of the legislature to abrogate their terms might differ in the two classes of cases, assuming always the intent of the legislature to do so. (*Rochester Tel. Co.* v. *Ross*, 195 N. Y. 431; *P. S. Comm.* v. *W. S. R. R. Co.*, 206 N. Y. 209; *Matter of N. Y. El. Lines Co.*, 201 N. Y. 334; *C. C. L. & F. Co.* v. *Tallahassee*, 186 U. S. 401; *W. U. Tel. Co.* v. *City of Syracuse*, 24 Misc. Rep. 338; *Ghee* v. *N. U. Gas Co.*, 158 N. Y. 512; *People* v. *O'Brien*, 111 N. Y. 40; *Wilcox* v. *R. L. & R. R. Co.*, 142 App. Div. 44; 202 N. Y. 51.)

CRANE, J.   In September of 1900 the village of South Glens Falls, New York, granted to the United Gas, Electric Light and Fuel Company the right and power to use the streets within the village for the purpose of maintaining pipes and necessary feeders for lighting, fuel and other

purposes for which gas may be used. The right was for the term of fifty years.

It was provided that in consideration of this license the said company should charge no greater sum than one dollar and twenty-five cents ($1.25) per thousand cubic feet for the use of gas for illuminating or fuel purposes.

The gas company established its plant in said village under this franchise and thereafter furnished gas to the inhabitants in accordance with its terms and conditions.

It appeared without contradiction that during the past five and one-half years the price of coal in the open market advanced 120% and at contract price approximately 74.6%; that the cost of manufacturing labor advanced 55.5% and that the taxes assessed against the company increased 37.6%, resulting in a cost to the company for delivery of gas at the consumers' burner in said village of $1.7594 per thousand cubic feet.

In August of 1917 the gas company increased its rate to one dollar and sixty cents ($1.60) per thousand cubic feet.

Thereupon and in January 1918, the village of South Glens Falls made complaint under section 71 of the Public Service Commissions Law (Cons. Laws, ch. 48) asking the commission for the second district to investigate the case and prohibit and restrain the gas company from raising its rates above one dollar and twenty-five cents ($1.25) per thousand cubic feet. It was alleged in the complaint that the franchise granted to the company in 1900 constituted a valid and binding contract and that the company could not for the term of fifty years increase its rate above said figure.

On the hearing before the commission the village through its counsel waived all question as to the reasonableness of the increase and stated that the only question presented was whether the franchise was such a binding contract that it could not be abrogated in any way by

220   Peo. ex rel. Vil. of S. Glens Falls *v.* P. S. Comm.

[225 N. Y.]            Opinion, per Crane, J.            . [Jan.,

the gas company or by the public service commission. . The latter body determined that it had power to regulate the rate to be charged for gas irrespective of the franchise of 1900 and dismissed the complaint. Upon review of these proceedings by the Appellate Division that court reversed the order of the commission and decided in effect that the public service commission had no power over the matter and granted the demand of the village that the company should be prohibited from charging more than the rate fixed in 1900.

The question is now presented to us as to whether the public service commission has power under the circumstances mentioned to regulate the price of gas. As the public service commission has only such authority as is given by the legislature of the state, the question resolves itself into two parts, *first,* has the legislature such power, and, *second,* has it conferred the power upon the public service commission.

The right which the village had to annex terms to its license given in 1900 to the gas company is to be found in article VII, section 61, subdivision 1, of the Transportation Corporations Law (Cons. Laws, ch. 63). This gives to gas companies the power " to lay conductors for conducting gas through streets  *  *  *  in each such city, village and town, with the consent of the municipal authorities thereof, and under such reasonable regulations as they may prescribe."

Some of my associates are of the opinion that in view of the changes which naturally come with time in civic life the fixing of a given rate by a village for a period of fifty years was not a reasonable regulation within the terms of the above statute. However this may be, much broader principles are here involved which we feel called upon to decide.

Has the legislature the power to fix and regulate the price at which this gas company shall furnish gas to the

inhabitants of the village of South Glens Falls? In the first place we must note the distinction between a contract made by a gas company to furnish the municipality *itself* with light and the terms and conditions upon which a municipality grants a franchise to furnish gas to its *inhabitants*. In the first instance the arrangement may be a contract pure and simple protected by the Constitution both federal and state from subsequent abrogation even by the legislature unless such power be reserved. Such was the case of *Kings County Lighting Company* v. *City of New York* (176 App. Div. 175; affd., 221 N. Y. 500). There the town of New Utrecht in December of 1889 made an agreement with the Kings County Gas and Illuminating Company for lighting the streets of New Utrecht for a term of ten years, extended to twenty-five by the legislature, at a rate of twenty-eight dollars ($28) per street lamp. New Utrecht was thereafter merged into the city of New York. By the Laws of 1905, chapter 736, it was provided that a corporation selling gas to the city of New York should not charge in excess of seventy-five cents ($.75) per one thousand cubic feet. The city succeeding to the liabilities of the town refused to pay the gas bills by virtue of this latter act, but it was said that any construction of the act of 1905 which would dissolve the obligation to the contract would be open to the charge of violating section 10 of article I of the Federal Constitution.

But the regulations regarding rates which municipalities may impose in granting licenses or permission to use its streets by public service corporations cannot be said to form contracts beyond the inherent police power of the legislature to modify for the public welfare. Reason dictates that such arrangements could not be contracts falling within the constitutional provisions against abrogation. Assume that a village has granted to a corporation a franchise to use its streets for gas or electricity under a

rate which is reasonable for the conditions as they exist at the time, but which, as the village has grown into a city, is exorbitant and excessively profitable to the corporation. Reduction in the rate by the legislature so as to be reasonable to the consumer and profitable to the corporation would seem to be well within the police power of the legislature. Reduction in rates seems to be generally recognized as a public benefit, and yet an increase may be equally so. The terms and conditions upon which a village may permit a public service corporation to use its streets may prove unsafe, unhealthy and extremely improper, as the community expands and grows. New inventions and contrivances in common use may necessitate a change. To say that such conditions were beyond the legislative control would bind the public to the facilities of our forefathers and be contrary to the numerous statutes which have been passed and recognized as legal requiring service corporations to change their plants. Thus the present Public Service Commissions Law relating to gas corporations, section 66, provides that the commission shall have power to order such reasonable improvements as will best promote the public interests, preserve the public health and protect those using gas and those employed in the manufacture and distribution thereof.

If a village, as a condition of granting a franchise, should specify the kind of pipes and the particular method of service which the company should provide, could it be said that when these conditions proved unsafe to the public the legislature could not order improvements because the franchise was a contract beyond abrogation? The same reasoning applies to rates of service. Change in conditions, in equipment, in the process of manufacture or in the manufactory itself to meet modern conditions costs money, and yet this cost should not be considered if the health and safety of the public demand a change.

A reasonable increase in rates in order to provide the
money for these changed conditions is as much a
benefit to the public as a reduction in rates when the
charge is excessive. It is a bad political economist who
thinks the public is always served best by that which is
cheap.

The authorities also sustain this view of the law. A
municipal corporation is simply a political subdivision
of the state and exists by virtue of legislative enactments.
Rate regulation is a matter of the police power of the
state and the terms and conditions such as here in question
contained in a franchise to a service corporation may be
modified without impairing the obligation of a contract
within the provisions of the Constitution. (*Louisville &
N. R. R. Co.* v. *Mottley*, 219 U. S. 467, 480, 482; *Texas
& N. O. R. R. Co.* v. *Miller*, 221 U. S. 408, 414; *Buffalo
E. S. R. R. Co.* v. *Buffalo Street R. R. Co.*, 111 N. Y. 132;
*City of Rochester* v. *Rochester Ry. Co.*, 182 N. Y. 99;
affd., 205 U. S. 236; *Portland Ry., L. & P. Co.* v. *City
of Portland*, 201 Fed. Rep. 119, 125.)

The second question is this: The legislature having
power to regulate charges of this gas company to the
consumers of the village of South Glens Falls, has it
conferred this power upon the public service commission?
Chapter 480 of the Laws of 1910, known as the Public
Service Commissions Law, would seem to give this power.
Subdivision 5 of section 66 reads:

" Whenever the commission shall be of opinion, after a
hearing had upon its own motion or upon complaint, that
the rates or charges or the acts or regulations of any such
person, corporation or municipality are unjust, unreason-
able, unjustly discriminatory or unduly preferential or
in any wise in violation of any provision of law, the
commission shall determine and prescribe the just and
reasonable rates and charges thereafter to be in force
for the service to be furnished notwithstanding that

a higher rate or charge has heretofore been authorized by statute.''

Section 72 provides:

'' An investigation may be instituted by the commission as to any matter of which complaint may be made, as provided in section seventy-one of this chapter, *or to enable it to ascertain the facts requisite to the exercise of any power conferred upon it.* After a hearing and after such an investigation as shall have been made by the commission or its officers, agents, examiners or inspectors, the commission within lawful limits may, by order, fix the maximum price of gas or electricity not exceeding that fixed by statute to be charged by such corporation or person, for the service to be furnished.   *   *   * ''

No statute has fixed the price of gas for this community. It seems quite clear to us, therefore, that the legislature having the power to regulate the charge to be made for gas by the United Gas, Electric Light and Fuel Company to the residents of the village of South Glens Falls has conferred this power by reason of the above provisions of law upon the public service commission and their action in dismissing the village's complaint was correct.

The Appellate Division based its decision upon the authority of *Matter of Quinby v. Public Service Comm.* (223 N. Y. 244). This case is not inconsistent or contrary to what is here stated. The matter there at issue was a railroad rate fixed by a city charter and contained in the street franchise to the company. We held that in view of article III, section 18, of the Constitution requiring the consent of the local authorities to the construction of a railroad that the power given to the public service commission to modify this rate should be distinctly and expressly conferred and that such power had not been given. It was said:

'' In the absence of clear and definite language con· ferring without ambiguity jurisdiction upon the public

service commission to increase rates of fare agreed. upon by the street railroad and the local authorities we should not unnecessarily hold that the legislature has intended to delegate any of its powers in the matter, whatever its powers may be.   The Public Service Commissions Law (Section 26, section 49, subd. 1) and the Railroad Law (Section 181) deal with maximum rates of fare established by statute but make no reference in terms to rates established by agreement with local authorities." (p. 263.)

The question as to the power of the legislature to deal with such rates was specifically reserved and not decided. The opinion clearly intimated that such power did exist.

For the reasons here stated the order of the Appellate Division should be reversed and that of the public service commission dismissing the complaint affirmed. Costs to the appellant in this court and in the Appellate Division.

McLAUGHLIN, J. (concurring).   I concur in the result reached by Judge CRANE.

The right to regulate rates of public service corporations is a governmental power vested in the state in its sovereign capacity.   It may be exercised by the state, or through a commission appointed by it; or it may delegate such power to a municipality.   The delegation of this power, however, is never implied since the effect is to extinguish, no matter for how short a time, *pro tanto* a power of the state.   Therefore, when delegated its existence and the authority to make it must clearly and unmistakably appear. (*Matter of Quinby* v. *Public Service Commission*, 223 N. Y. 244.)   Every doubt must be resolved in favor of the continuance of the power in the State (*Home Telephone & Telegraph Co.* v. *Los Angeles,* 211 U. S. 265; *Wyandotte County Gas Co.* v. *Kansas,* 231 U. S. 622.)

15

Our attention has been called to no provision in the charter of the village of South Glens Falls by which it is claimed the power was given to such village to fix the maximum rate at which gas should be sold to consumers. It may be assumed that the charter gave to the village the right to make certain contracts necessary for its corporate existence, but this power did not include. the right to make a contract fixing the rate at which gas should be sold to the public. When the franchise was granted to the United Gas, Electric Light and Fuel Company, both it and the village were bound to take notice of the right of the state to step in at any time and fix a rate other than that stated in the franchise. The legislature by the creation of the public service commission delegated to that body the power to fix a rate, and this it may exercise whenever it sees fit to do so notwithstanding the provision of the franchise fixing the maximum price for a term of fifty years. The act of the village and the gas company in thus contracting, while it may have been binding upon the parties to it, had no effect upon the power of the state acting through the public service commission to which has been delegated all the power the state has in fixing rates at which gas can be sold to the public. The whole act creating the public service commission indicates as clearly as language can that the legislature intended to give to that body all the power necessary to fix a rate at which gas could be sold throughout the state. Thus article 1, section 4, of the Public Service Commissions Law provides that the commission shall possess the powers and duties specified in the act but " also all powers necessary or proper to enable it to carry out the purposes of this chapter." Article 4, section 66, subdivision 5, provides that " whenever the commission shall be of opinion, after a hearing had upon its own motion or upon complaint, that the rates or charges or the acts or regulations of any such

Peo. ex rel. Vil. of S. Glens Falls *v.* P. S. Comm.   227

1919.]   Opinion, per McLaughlin, J.   [225 N. Y.]

person, corporation or municipality are unjust, unreasonable, unjustly discriminatory or unduly preferential or in anywise in violation of any provision of law, the commission shall determine and prescribe the just and reasonable rates and charges." And article 4, section 72, provides that after the hearing and after such investigation as shall have been made by the commission or its officers or agents " the commission within lawful limits may, by order, fix the maximum price of gas or electricity not exceeding that fixed by statute to be charged by such corporation or person, for the service to be furnished; * * *. In determining the price to be charged for gas or electricity the commission may consider all facts which in its judgment have any bearing upon a proper determination of the question. * * * "

It is true that in article 7, section 61, subdivision 2, of the Transportation Corporations Law (L. 1909, ch. 219) the right of a public service corporation to lay conductors for conducting gas through the streets of a city or village is given, but this right cannot be exercised without the consent of the municipal authorities " under such reasonable regulations, as they may prescribe." " Reasonable regulations " does not include the right to fix a rate so that the state cannot interfere and fix a different one. (*Wyandotte County Gas Co.* v. *Kansas, supra; Portland R., L. & P. Co.* v. *City of Portland,* 201 Fed. Rep. 119; *City of Benwood* v. *Public Service Commission,* 75 W. Va. 127; *Milwaukee Electric R. & Lt. Co.* v. *Railroad Commission,* 153 Wis. 592. See, also, *People ex rel. N. Y. & N. S. T. Co.* v. *Public Service Commission,* 175 App. Div. 869; *People ex rel. Bridge Operating Co.* v. *Public Service Commission,* 153 App. Div. 129.) If this view be correct, then it necessarily follows that there is at the present time lodged in the public service commission the power to fix a rate at which gas shall be sold by the appellant.

But it is urged that this view is in conflict with the one expressed in *Matter of Quinby* v. *Public Service Commission (supra).* I do not think so. On the contrary it seems to me that case is clearly distinguishable. There the question presented related to rates of a street surface railroad operating in the city of Rochester. Before the railroad company occupied the streets of the city it had to obtain the consent of the municipal authorities. The Constitution, as amended in 1875, so provided (Article 3, section 18). The consent was obtained but only on condition that the rate for one continuous ride should not exceed five cents per passenger. The condition thus imposed was accepted and the franchise granted by the city in 1890. In 1894 another contract was entered into between the city and the railroad company which ratified and confirmed the contract of 1890 as well as all ordinances relating to it. This contract was expressly recognized by the legislature in paragraph 173 of the Railroad Law (L. 1910, ch. 481); and in section 181 of the same law a provision was inserted which prohibits a railroad operating in any incorporated city or village from charging any passenger more than five cents for a continuous ride. In 1915 the legislature amended the charter of the city of Rochester and added a new section which provides that all street surface railroads operating cars in the streets of the city should not charge more than five cents per passenger for each continuous journey. In view of the constitutional provision requiring the consent of the local authorities, the agreement as to the maximum fare to be charged as a basis of the consent, the legislative recognition of the contract, and the act of 1915 fixing the maximum rate at five cents, this court held that it did not find in the Public Service Commissions Law that the state had delegated to the public service commission the power to increase the rate in excess of that agreed upon between the railroad company and the local

authorities, and that if the legislature had so intended then such intent should have been expressed in "clear and definite language."

In the present case there was no constitutional provision requiring the consent of the local authorities before the streets of the village could be occupied by the gas company. There has been no legislative recognition of the terms imposed as a condition of granting the franchise. No statute has been enacted fixing the maximum price at which gas can be sold. And it does appear from the Public Service Commissions Law that the legislature intended to and has given the commission the power either to increase or to decrease the price at which gas shall be furnished to the public.

The distinction thus made is not fanciful. It is real. It is substantial. In the *Quinby* case the intent on the part of the legislature to delegate the power to fix a rate could not be found, and there was a fair inference, at least, from legislative acts that such power had not been given but was retained by the state. In the present case the intent does appear. The statute creating the public service commission indicates as clearly as language can that the legislature intended to give to the commission all the power necessary either to increase or to diminish rates at which gas should be sold.

Entertaining these views I am of the opinion that the order of the Appellate Division should be reversed, etc.

CHASE, J. (dissenting). This court decided in the *Quinby* case (*Matter of Quinby* v. *Public Service Commission*, 223 N. Y. 244) that it was not the intention of the legislature by the Public Service Commissions Law to confer upon the public service commissions jurisdiction and power to raise the rate of fare that can be charged by a street railroad corporation to an amount in excess of the amount at which it had been expressly

limited by agreement between the street railroad corporation and the local authorities of the municipality in which the corporation is maintaining its road. In doing so, this court say: " In the absence of clear and definite language conferring without ambiguity jurisdiction upon the public service commission to increase rates of fare agreed upon by the street railroad and the local authorities we should not unnecessarily hold that the legislature has intended to delegate any of its powers in the matter, whatever its powers may be."

The decision in that case was confined to holding that the legislature did not intend to delegate its power, if any, relating to the increase of rates of fare of street railroads so agreed upon, to the public service commissions. Whether the legislature has the power, directly or by delegation to the commissions, to increase the rates of fare so agreed upon, was not passed upon in that case.

The case now before us involves a gas corporation and a price to be charged for gas in excess of a maximum price fixed and determined upon as a consideration for granting a franchise to the appellant by the local authorities and not an increase in the rate of fare to be charged by a street railroad corporation in excess of an amount fixed by a similar agreement. It is now sought to have this court hold that although the legislature did not intend to confer jurisdiction and power on the public service commissions to increase rates of fare agreed upon between street railroad corporations and the local authorities, it was the intention of the legislature to confer jurisdiction and power on such commissions to increase the price of gas similarly agreed upon between a gas company and the local authorities.

If such decision is to be made the difference of intention should be found in the act in " clear and definite language."

I do not find any substantial basis on which to distinguish the decision in the *Quinby* case to permit of

Peo. ex rel. Vil. of S. Glens Falls *v.* P. S. Comm.    **231**

1919.]                Dissenting opinion, per Chase, J.        [225 N. Y.]

making a different decision in this case. The general power of the public service commissions relating to a gas corporation is the same as that relating to a street railroad corporation.

The Public Service Commissions Law provides that the public service commission for each district shall possess the powers and duties in the act specified, and also, " All powers necessary or proper to enable it to carry out the purposes " of the act. (Sec. 4.)

The Public Service Commissions Law (§ 26, § 49, subd. 1) and the Railroad Law (§ 181) deal with maximum rates of fare established by statute but make no reference in terms to rates established by agreement with local authorities. (*Matter of Quinby* v. *Public Service Commission, supra.*) The same is true of the Public Service Commissions Law (§ 66, § 71 and § 72) and the Transportation Corporations Law (§ 61).

In this case as in the *Quinby* case the question involved is the jurisdiction of the public service commissions to grant the particular relief to which the corporation involved deems itself entitled. The reasonableness of the rate of fare or of the price of gas to which the corporations respectively deem themselves entitled, has not been controverted in either case.

A comparison of the provisions of the Public Service Commissions Law relating specially to the power of the commissions over rates of fare to be charged by street railroad corporations, with those specially relating to such power over the price to be charged for gas, will show that the legislature did not clearly or otherwise express a different intention about the power of the commissions relating thereto. Section 49 specially relating to rates of fare to be charged by street and other railroad corporations is as follows:

" 1. Whenever either commission shall be of opinion, after a hearing had upon its own motion or upon a com-

232 Peo. ex rel. Vil. of S. Glens Falls v. P. S. Comm.

[225 N. Y.]          Dissenting opinion, per Chase, J.          [Jan.,

plaint, that the rates, fares or charges demanded, exacted, charged or collected by any common carrier, railroad corporation or street railroad corporation subject to its jurisdiction for the transportation of persons or property within the state, or that the regulations or practices of such common carrier, railroad corporation or street railroad corporation affecting such rates are unjust, unreasonable, unjustly discriminatory or unduly preferential, or in any wise in violation of any provision of law, or that the maximum rates, fares or charges, chargeable by any such common carrier, railroad or street railroad corporation are insufficient to yield reasonable compensation for the service rendered, and are unjust and unreasonable, the commission shall with due regard among other things to a reasonable average return upon the value of the property actually used in the public service and to the necessity of making reservation out of income for surplus and contingencies, determine the just and reasonable rates, fares and charges to be thereafter observed and in force as the maximum to be charged for the service to be performed, notwithstanding that a higher rate, fare or charge has been heretofore authorized by statute, and shall fix the same by order to be served upon all common carriers, railroad corporations or street railroad corporations by whom such rates, fares and charges are thereafter to be observed.  *  *  *."

The sections specifically relating to the price to be charged for gas are as follows:

"  *  *  *. Whenever the commission shall be of opinion, after a hearing had upon its own motion or upon complaint, that the rates or charges or the acts or regulations of any such person, corporation or municipality are unjust, unreasonable, unjustly discriminatory or unduly preferential or in any wise in violation of any provision of law, the commission shall determine and prescribe the just and reasonable rates and charges

Peo. ex rel. Vil. of S. Glens Falls *v.* P. S. Comm. 233

1919.]         Dissenting opinion, per Chase, J.         [225 N. Y.]

thereafter to. be in force for the service to be furnished notwithstanding that a higher rate or charge has heretofore been authorized by statute, and the just and reasonable acts and regulations to be done and observed; * * *." (§ 66, subd. 5.)

" Upon the complaint in writing of the mayor of a city, the trustees of a village or the town board of a town in which a person or corporation is authorized to manufacture, sell or supply gas or electricity for heat, light or power, or upon the complaint in writing of not less than one hundred customers or purchasers of such gas or electricity in cities of the first or second class, or of not less than fifty in cities of the third class, or of not less than twenty-five elsewhere, or upon complaint of a gas corporation or electrical corporation supplying said gas or electricity, as to the illuminating power, purity, pressure or price of gas, * * *, the proper commission shall investigate as to the cause of such complaint. * * *." (§ 71.)

" Before proceeding under a complaint presented as provided in section seventy one, the commission shall cause notice of such complaint, and the purpose thereof, to be served upon the person or corporation affected thereby. Such person or corporation shall have an opportunity to· be heard in respect to the matters complained of at a time and place to be specified in such notice. An investigation may be instituted by the commission as to any matter of which complaint may be made, as provided in section seventy-one of this chapter, or to enable it to ascertain the facts requisite to the exercise of any power conferred upon it. After a hearing and after such an investigation as shall have been made by the commission or its officers, agents, examiners or inspectors, the commission within lawful limits may, by order, fix the maximum price of gas or electricity not exceeding that fixed by statute to be charged by such

corporation or person, for the service to be furnished; and may order such improvement in the manufacture, distribution or supply of gas, in the manufacture, transmission or supply of electricity, or in the methods employed by such person or corporation, as will in its judgment be adequate, just and reasonable. The price fixed by the commission under this section or under subdivision five of section sixty-six shall be the maximum price to be charged by such person, corporation or municipality for gas or electricity for the service to be furnished within the territory and for a period to be fixed by the commission in the order, not exceeding three years except in the case of a sliding scale, and thereafter until the commission shall, upon its own motion or upon the complaint of any corporation, person, or municipality interested, fix a higher or lower maximum price of gas or electricity to be thereafter charged. In determining the price to be charged for gas or electricity the commission may consider all facts which in its judgment have any bearing upon a proper determination of the question although not set forth in the complaint and not within the allegations contained therein, with due regard among other things to a reasonable average return upon capital actually expended and to the necessity of making reservations out of income for surplus and contingencies." (§ 72.)

Where the maximum rate of fare on street railroads and the price of gas have each been fixed by agreement with local authorities the public service commissions are equally restricted in their power and jurisdiction on their own motion or on complaint to authorize an increase of the same.

It is suggested that no statute has fixed the price of gas in South Glens Falls. It is for the reason that the price of gas has been fixed by agreement with the local authorities that the question involved on this appeal is controlled by the decision in the *Quinby* case. The

decision in that case was expressly placed upon the ground that authority is not given to the commission by the legislature to increase the amount of fare then in controversy above the maximum amount agreed upon as a condition of granting the railroad franchise.

It is also suggested that the constitutional provision (Constitution State of New York, art. 3, section 18) providing for the consent of certain owners of property and of the local authorities before a law shall authorize the construction of a street railroad, gives the commissioners greater power over the fare to be charged by a street railroad corporation than it has over the price to be charged for gas by a gas corporation.

The Constitution provides: " No law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having the control of, that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained, or in case the consent of such property owners cannot be obtained, the appellate division of the supreme court, in the department in which it is proposed to be constructed, may, upon application, appoint three commissioners who shall determine, after a hearing of all parties interested, whether such railroad ought to be constructed or operated, and their determination, confirmed by the court, may be taken in lieu of the consent of the property owners."

The constitutional provision prohibits any law authorizing the construction or operation of a street railroad except upon the condition therein stated but it does not in any way prescribe or limit the fare to be charged by a street railroad corporation. It does not in any way affect the question now before us relating to the power of the public service commission to increase the maximum rate of fare to be charged by a street railroad corporation,

or the price of gas to be charged by a gas corporation, over and above the amount agreed upon by the street railroad or gas company respectively and the municipality.

The decision in the *Quinby* case stands upon the words that I have quoted herein. It does not depend upon the constitutional provision. It is not affected by the constitutional provision unless perchance we reason as did the appellant in that case as recited in the opinion of Judge POUND as follows: " It would be a vain thing if the consent were placed under the protection of the Constitution, and the conditions which induced such consent were immediately subject to extinguishment *by the legislature* for that would mock the very purpose of the constitutional provision and permit almost any interference by the legislature; that the local authorities in this matter are supreme over the public service commission by virtue of the Constitution; that the obligation of a street surface railroad to carry passengers for an agreed fare may in a constitutional sense be neither a contract nor private property, but it is imposed by virtue of a delegated power, delegated by the people — not by the legislature — to the local authorities, and is thus beyond legislative recall." (p. 262.)

It was the contention of the appellant in that case that the legislature has no power in any case to increase rates of fare agreed upon by a street railroad and the local authorities. That question, I repeat, was not decided in that case. The language last above quoted was not adopted by the court or by the writer of the opinion.

Both cases should, in my judgment, stand upon the language quoted from the *Quinby* opinion to the effect that the legislature did not intend to delegate its power in cases where the rates of fare or price of gas have been established by and between the street railroad or gas companies respectively and the municipalities.

If we stand upon a distinction in the power of the

commissions as proposed, it may lead to the conclusion that so far as street railroads are concerned the legislature has no power to interfere in case of contracts such as that in Rochester and others of like effect because as suggested in the opinion in the *Quinby* case and as claimed by the appellants in that case, such contracts have passed beyond legislative recall.

The order should be affirmed, with costs.

HISCOCK, Ch. J., CUDDEBACK and McLAUGHLIN, JJ. (the latter in opinion in which also HISCOCK, Ch. J., concurs) concur with CRANE, J.; CHASE, J., reads dissenting opinion, in which COLLIN, J., concurs; HOGAN, J., dissents generally.

Order reversed, etc.