Matter of the Application of the International Railway Company for a Writ of Mandamus *v.* Public Service Commission, Second District.

(Supreme Court, Albany Special Term, February, 1919.)

Mandamus — when writ of, will issue — power of public service commission to determine rates of fare within the city of Buffalo — municipal corporations — street railways.

The public service commission, second district, has power to determine the maximum rates of fare established by statute for the transporting of passengers in and about the city of Buffalo, N. Y.

Where, therefore, in a proceeding instituted before the public service commission, second district, upon the complaint of the city of Buffalo, N. Y., against a railway company, said commission refuses to receive the answer of the railway company on the ground of want of power to determine the rates of fare within said city in excess of five cents, a writ of mandamus will issue directing the commission to receive the answer and proceed to a determination of the question involved.

APPLICATION for a writ of mandamus.

Penney, Killeen & Nye (Henry W. Killeen, of counsel), for petitioner.

William S. Rann, corporation counsel (George E. Pierce, of counsel), for city of Buffalo.

RUDD, J.  The petitioner seeks a writ of mandamus directed to the public service commission, second district, requiring the commission to receive the answer of the International Railway Company in a certain proceeding brought upon the complaint of Louis P. Fuhrmann, individually and as mayor of the city of Buffalo, against the International Railway Company, praying the public service commission of the second district to investigate under the complaint filed, and to fix and determine the just and reasonable maximum rates of fare to be charged by the International Railway Company for transporting passengers in and about the city of Buffalo.

The public service commission has refused to receive the answer of the railway company and to investigate, upon the ground that as a matter of law the commission is without power, so far as this railway is concerned, to determine the rate of fare in excess of five cents.

The facts upon this motion are practically agreed

upon and no objection is entered by the city of Buffalo as to the form of the relief here sought. The commission takes no part, allowing the city of Buffalo, which has intervened, to make objection upon the merits as it is advised.

The rate of fare now prevailing in Buffalo is the result of the Milburn Agreement, ratified by chapter 151, Laws of 1892, certain portions of which have been incorporated in franchises and consents in many cases.

The 10th paragraph of the Milburn Agreement provides that " Nothing in this contract contained shall be construed to prevent the Legislature from regulating the fares of said companies or either of them."

The railway company contends that the legislature has power to change the contract rate of fare and that under section 49 of the Public Service Commissions Law the legislature delegated to the public service commission such power.

The city of Buffalo submits that the court has finally settled adversely as to the power and authority of the public service commission to act under conditions such as here confront us in *Matter of Quinby* v. *Public Service Commission*, 223 N. Y. 244, which holds that there is no delegation of power to the public service commission to interfere with a rate once established by agreement.

After the *Quinby* case came the decision in *People ex rel. South Glens Falls* v. *Public Service Commission*, 225 N. Y. 216.

The village of South Glens Falls granted to the Gas, Electric Light and Fuel Company the right to use the village streets for pipes and necessary feeders for lighting, for the term of fifty years. It was conditioned upon a maximum charge to consumers of one dollar and twenty-five cents per 1,000 cubic feet.

Judge Crane, writing for the court, said: " The

question is now presented to us as to whether the public service commission has power under the circumstances mentioned to regulate the price of gas. As the public service commission has only such authority as is given by the legislature of the state, the question resolves itself into two parts, *first,* has the legislature such power, and, *second,* has it conferred the power upon the public service commission."

The court held that such power was delegated to the public service commission. Reference was made to the *Quinby* case as not inconsistent with the ruling in the *South Glens Falls* case. Judge Crane said the matter in the *Quinby* case " at issue was a railroad rate fixed by a city charter and contained in the street franchise to the company. We held that in view of article III, section 18, of the Constitution requiring the consent of the local authorities to the construction of a railroad that the power given to the public service commission to modify this rate should be distinctly and expressly conferred and that such power had not been given."

The power, however, has been given by the decision in the *Quinby* case to deal with maximum rates of fare established by statute.

In the *South Glens Falls* case Judge Crane said: " the regulations regarding rates which municipalities may impose in granting licenses or permission to use its streets by public service corporations cannot be said to form contracts beyond the inherent police power of the legislature to modify for the public welfare. Reason dictates that such arrangements could not be contracts falling within the constitutional provisions against abrogation."

Such is the power here, for the maximum rate established was one fixed and made operative by legislative act in ratifying the Milburn Agreement, without

which approval the agreement would have had no effective force.

Legislative power of fare regulation was specifically reserved in paragraph 10 of the Milburn Agreement.

It matters not whether the effort is to reduce or increase a rate; either is a proper exercise of a police regulation, and, as Judge Crane said in the *South Glens Falls* case, "Reduction in rates seems to be generally recognized as a public benefit, and yet an increase may be equally so."

It seems that the relief here sought should be granted and we are sustained in this conclusion by the United States Supreme Court in *Union Dry Goods Co.* v. *Georgia Public Service Corporation,* 248 U. S. 372.

An order may be entered directing the issuance of a peremptory writ of mandamus requiring the commission to proceed with the hearing and determination of proceeding brought by the city of Buffalo against the International Railway Company.

Ordered accordingly.