TOWN OF NORTH HEMPSTEAD, Appellant, *v.* PUBLIC SERVICE CORPORATION OF LONG ISLAND, Respondent.

Second Department, July 27, 1920.

**Gas and electricity — gas company operating under franchise fixing rates — right to increase rates without order from Public Service Commission.**

A gas corporation which is occupying the streets of a town under a franchise agreement that fixes the rates to be charged, cannot increase the rates in violation of the franchise by the mere filing of the schedule of rates with the Public Service Commission, with the accompanying notice and publication.

In such case the rates can be increased only upon good cause shown and after due notice and hearing before the Public Service Commission.

APPEAL by the plaintiff, Town of North Hempstead, from an order of the Supreme Court, entered in the office of the clerk of the county of Nassau on the 8th day of May, 1920, denying plaintiff's motion to continue a temporary injunction contained in an order to show cause granted by the county judge of Nassau county on April 26, 1920, restraining the defendant from increasing the rates charged by it for gas over the rates fixed by the franchise granted defendant, and vacating said temporary injunction.

*James L. Dowsey,* for the appellant.

*Luke D. Stapleton* [*Randall J. Le Boeuf* with him on the brief], for the respondent.

Kelly, J.:

The question presented on this appeal is whether the defendant gas corporation has the power under the provisions of the Public Service Commissions Law (§ 66, subd. 12) to increase the rates and charges specified in the franchise agreement of 1912 under which it occupies the streets of the town, by filing a new schedule prepared by the company, without the consent of the town and without any action of the Public Service Commission approving such increase.

In *People ex rel. Village of South Glens Falls* v. *P. S. Comm.* (225 N. Y. 216) the Court of Appeals held that a franchise or permit to use the public highways to supply gas to the inhabitants did not constitute a contract beyond the power of the Legislature to modify for the public welfare, and that notwithstanding such franchise, permit or agreement fixed a rate, the Legislature still has the power to change and increase the rate so fixed and that it had conferred that power upon the Public Service Commission. The plaintiff town does not dispute the right of the Public Service Commission in a proper case after hearing and investigation to grant an increase of rates to the defendant gas corporation (*People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356), but contends that such corporation cannot by its own act increase rates and charges agreed upon in its franchise and in force for eight years, without any order by the Commission; the plaintiff insists that the mere filing by defendant gas company of its schedule of increased rates and charges is no justification for such increase.

Such was the decision of Mr. Justice Scudder in *Village of Freeport* v. *Nassau & Suffolk Lighting Co.* (111 Misc. Rep. 671). That learned judge said in the case cited: " It seems to me that it would be inherently unjust, if not unconstitutional, for the Legislature to delegate its power to modify such contracts to the gas company, a party to the contract; and that in the absence of explicit language compelling it, subdivision 12 of section 66 of the Public Service Commissions Law should not be construed as authorizing, in cases where there is a contract between a village and a gas company like the one in the present case, the gas company to increase the

contract rate by the mere filing of a schedule, without any action by the Commission."

The Court of Appeals having held that such a contract or franchise may be modified by the Legislature for the public welfare, the decision in the *Freeport Case (supra)* is in effect that it is for the Legislature or the Public Service Commission to decide what is required for the public welfare rather than the gas company. Aside from the question whether the defendant is justified in its desire to increase its rates, and whether the increase demanded is reasonable and proper, it would appear that this police power to change the existing order of things under the franchise entered on the records of the town and complied with hitherto by the defendant, must be exercised by the State through its regularly constituted authorities. It is for the State through its Public Service Commission to determine whether a change shall be made from the rate agreed upon, and not for the defendant.

The provisions of the Public Service Commissions Law which give rise to this controversy are found in section 66, "*General powers of Commissions in respect to gas and electricity.*" It is declared that "Each Commission shall within its jurisdiction: * * * 12. Have power to require every gas corporation, electrical corporation and municipality to file with the Commission and to print and keep open to public inspection schedules showing all rates and charges made, established or enforced or to be charged or enforced, all forms of contract or agreement and all rules and regulations relating to rates, charges or service used or to be used, and all general privileges and facilities granted or allowed by such gas corporation, electrical corporation or municipality; but this subdivision shall not apply to State, municipal or Federal contracts. Unless the Commission otherwise orders, no change shall be made in any rate or charge, or in any form of contract or agreement or any rule or regulation relating to any rate, charge or service, or in any general privilege or facility, which shall have been filed and published by a gas corporation, an electrical corporation or municipality in compliance with an order of the Commission, except after thirty days' notice to the Commission and publication for thirty days as required by order of the Commission, which shall plainly state the

Town of North Hempstead v. Pub. Serv. Corp.   227

App. Div.]        Second Department, July, 1920.

changes proposed to be made in the schedule then in force and the time when the change will go into effect. The Commission for good cause shown may allow changes without requiring the thirty days' notice under such conditions as it may prescribe. No corporation or municipality shall charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges applicable to such services as specified in its schedule filed and in effect at the time; nor shall any corporation or municipality refund or remit in any manner or by any device any portion of the rates or charges so specified, nor to extend to any person or corporation any form of contract or agreement, or any rule or regulation, or any privilege or facility, except such as are regularly and uniformly extended to all persons and corporations under like circumstances. The Commission shall have power to prescribe the form of every such schedule, and from time to time prescribe by order such changes in the form thereof as may be deemed wise. The Commission shall also have power to establish such rules and regulations to carry into effect the provisions of this subdivision as it may deem necessary, and to modify or amend such rules or regulations from time to time."

The defendant insists that the filing of the schedule of rates with the Public Service Commission, with the accompanying notice and publication, established legal rates, and the only ones defendant could charge after such rates became effective. It claims that this action on its part alone is sufficient to effect an increase in its charges over those stipulated in the franchise under which it was permitted to lay its mains in the public highways of the town. (Trans. Corp. Law, § 61.) But this seems to be an unreasonable interpretation of the statute. It may be that in a case where the rates were originally fixed by the gas company, without agreement or municipal consent containing reasonable regulations, such *ex parte* increase might be countenanced. But to say that one party to a contract may of his own free will alter it in any such radical method as is here proposed is contrary to all our conceptions of contract obligations. It would seem that the obvious intention of the Legislature was to vest this

power in the Public Service Commission, and then in an orderly way upon notice and after hearing upon good cause shown. (Pub. Serv. Comm. Law, §§ 71, 72.) Else there is nothing to prevent the gas company from arbitrarily changing the *status quo* and fixing any price it may see fit, with the alternative to the consumer to go without gas, or pay the rate demanded pending a hearing and decision by the Commission in a proceeding instituted by the individual consumer. In the present case, upon the filing of the *ex parte* schedule of increased rates, the consumers promptly lodged a complaint with the Commission, but while the Commission has entertained the complaint, the proceedings are, for some reason, perhaps necessarily, long drawn out, and in the meantime the gas company which obtained the permit to use the public streets in consideration of its promise to supply gas at specified rates and upon specified conditions asserts the right to disregard its agreement. But the defendant cites the decision in *Public Service Commission* v. *Iroquois Natural Gas Co.* (184 App. Div. 285; affd., without opinion, 226 N. Y. 580), where this court in the Fourth Department reversed a judgment of the Special Term enjoining the defendant from increasing the rates charged to customers in the city of Buffalo and other parts of western New York above a rate already established by schedules filed by the company with the Commission. That case, however, did not involve a rate fixed by contract or franchise as in the case at bar. Mr. Justice Foote, writing for the Appellate Division, points out (at p. 291) that the only provision applying to the rate to be charged by the gas company was in an order of the Commission previously made upon stipulation between the defendant and the Public Service Commission, and he says: " As I read the order of the Commission of June 5, 1912, in which was embodied copies of these stipulations, it does not have the meaning attributed to it by the petitioner to forbid an increase of rates until the gas company has proved to the Commission that its existing rates were insufficient, nor does the stipulation which defendant made have that meaning." The decision in the case of the *Iroquois Company* turned entirely upon the language of the stipulation.

The defendant cites the decision in *Public Service Commission*

Town of North Hempstead *v.* Pub. Serv. Corp. **229**

App. Div.]          Second Department, July, 1920.

v. *Pavilion Natural Gas Co.* (111 Misc. Rep. 692) where it was held on the authority of the *Iroquois Case* (*supra*) that the filing of the schedule by the gas company of itself, automatically, authorized an increase over franchise rates in various villages and towns in the counties of Genesee and Livingston.· In the case of the *Pavilion Company* it had filed a petition with the Public Service Commission in August, 1919, asking for an increase in rates, but through unavoidable delays it failed in securing a hearing, and in February, 1920, filed a schedule of increased rates.   The learned justice at Special Term held that under section 66, subdivision 12, of the Public Service Commissions Law (*supra*), these rates became effective in thirty days after the filing of the schedule, notwithstanding the limitations in the franchises granted in the various villages and towns affected.   He said: " Notwithstanding the fact that the rates are greater than the franchise rates, there can be no violation of law in doing that which the law allows to this respondent. This is so irrespective of any assumption that without the benefit of this statute, a change of rates would constitute a violation of law.   Having held that the language of subdivision 12 of said section 66 must be applied generally in accordance with its unrestricted terms I am bound to hold that, even if there was a franchise agreement, it was the legislative intent to overcome it by higher legislative authority and through the written law of the State.   The statute itself presumes that the rates set forth in the schedules are fair and reasonable after the thirty-day period, unless and until the Commission acts."

With all deference to the learned Special Term, I do not think the Legislature intended to vest such unusual and arbitrary power in the gas company to abrogate its contract. I agree with Mr. Justice Scudder in the *Freeport* case, that " it would be inherently unjust, if not unconstitutional, for the Legislature to delegate its power to modify such contracts to the gas company, a party to the contract."

The precise question now before the court was decided adversely to the contention of the defendant in *Village of Warsaw* v. *Pavilion Natural Gas Co.* (111 Misc. Rep. 565).   In that case Mr. Justice Wheeler distinguishes the case of the *Iroquois Company* (*supra*) on the ground that the decision turned upon the question of the stipulations of the company and order

of the Commission and not upon an agreement or franchise. Referring to the right vested in the Legislature to modify such contracts for the public good, he says: " When and by whom shall this police power be exercised to modify an existing franchise rate? The evident answer is only by the State through its regularly constituted authorities. It would seem most illogical that a party to such franchise contract desiring to avoid its obligations might on its own motion, and without the consent of State authority, repudiate its obligations under the franchise, and undertake to exercise the police power alone vested in the State. But that in effect is just what the defendant in this case has undertaken to do. It is true it has petitioned the Public Service Commission for leave to increase its rates for gas furnished consumers, and that proceeding is now pending before that body; but until a final decision in that proceeding is rendered and for the time being the defendant proposes to charge consumers the increased rate specified in its amended tariff schedule. In other words, it proposes to be a law unto itself for the time being, and until the Public Service Commission finally acts. We do not think that position can be sustained upon principle — and that until the Public Service Commission decides the defendant is entitled to a higher rate for gas it is bound by the franchise rates agreed on in the grants given by the village plaintiffs. It is for the State to determine whether a modification of the franchise rate shall be made, and not for the defendant."

In my opinion the defendant has no right to change the rates and regulations contained in the franchise under which it occupies the public streets of the town, without an order of the Public Service Commission duly made. (Pub. Serv. Comm. Law, §§ 71, 72.)

The order should be reversed, with ten dollars costs and disbursements, and the motion to continue temporary injunction pending trial and judgment granted, with ten dollars costs.

JENKS, P. J., RICH, PUTNAM and BLACKMAR, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion to continue temporary injunction pending trial and judgment granted, with ten dollars costs.