VILLAGE OF WARSAW, Respondent, *v.* PAVILION NATURAL
GAS COMPANY, Appellant.

Fourth Department, March 16, 1921.

**Gas and electricity — rates — gas company cannot raise rates above
franchise maximum by filing schedules and publishing under
Public Service Commissions Law, section 66, subdivision 12 —
procedure to change rates under Public Service Commissions
Law, section 71, where maximum fixed by contract or franchise.**

A gas company cannot legally increase its rate above the maximum pro-
vided by its franchise or contract with a municipality by filing a schedule
of increased rates and publishing for thirty days under the provisions
of subdivision 12 of section 66 of the Public Service Commissions Law;
that can be done only where there is no prohibitory contract or franchise
rate.

Where a gas company deems the maximum rate fixed by contract or franchise
to be unjust and unreasonable, due to a change in conditions from the
time when the rate was agreed on, it must proceed under section 71 of
the Public Service Commissions Law by making a complaint to the Com-
mission, and after a hearing the Commission may abrogate the contract
rate and give the company the rate to which it may be entitled, not
exceeding a rate fixed by statute.

APPEAL by the defendant, Pavilion Natural Gas Company,
from an order of the Supreme Court, made at the Erie Special
Term and entered in the office of the clerk of the county of
Wyoming on the 1st day of June, 1920, granting plaintiff's
motion for an injunction *pendente lite.*

*James M. E. O'Grady,* for the appellant.

*Clarence H. Greff* [*Arthur E. Sutherland* of counsel], for the
respondent.

DAVIS, J.:

The appellant, a domestic gas corporation, on April 14,
1909, obtained from the village of Warsaw, a municipal
corporation, a franchise whereby it was permitted to lay its
mains and pipes in the streets, agreeing on its part that it
would furnish a supply of gas to its customers in said village,
including the municipality itself, at a maximum rate of forty

cents per 1,000 feet for the individual customers, and twenty cents per 1,000 feet to the municipality for lighting certain buildings. The term of this agreement was fifty years.

The corporation thereafter laid its mains, established and charged the franchise rates to the municipality and its citizens, filing and publishing schedules thereof as the law and the orders of the Public Service Commission required.

It is now claimed by the corporation that owing to changed conditions these rates have become unprofitable. It says that it does not receive sufficient revenue from the sale of its gas to pay operating expenses. Therefore, on August 8, 1919, it filed a petition with the Public Service Commission of the Second District for leave to increase its rate to individual customers to seventy-five cents per 1,000. The village appeared and filed objections, and a proceeding was conducted by the Commission to determine whether or not such increase should be permitted.

While this proceeding was pending the corporation on February 7, 1920, filed a schedule with the Commission fixing the rate for the individual consumers at eighty-five cents per 1,000 feet. This rate was to become effective March tenth, and would be collected the following month. When bills were received by customers in April they were charged the new rate, and their bills contained a notice that the gas would be shut off if the rate was not paid. Thereupon, the village brought this action and obtained a temporary injunction restraining the corporation from enforcing the rate and shutting off the gas. From the order granted at Special Term this appeal was taken.

The question fairly presented here is, did the appellant have the right, sanctioned by legislative act, to file such schedule of increased rates, and thereby abrogate the franchise rate and establish a higher one without notice to the village and without action thereon by the Public Service Commission?

The right to increase such rate is claimed under the provisions of section 66, subdivision 12, of the Public Service Commissions Law. That section grants to the Public Service Commission supervision over gas and electrical corporations, with power, among other things, to require them to file, print and to keep open to public inspection schedules of rates and

charges made.  The purpose of this portion of the law is evidently that the public may have notice of what consumers will be required to pay, and that it may be known that there will be no discrimination between consumers of the same class.

The corporations are, by a further provision, forbidden to change the rate, charge or service so filed, " except after thirty days' notice to the Commission and publication for thirty days as required by order of the Commission, which shall plainly state the changes proposed to be made in the schedules then in force and the time when the change will go into effect." The purpose of this portion of the law also is plain.  It is intended to prevent the giving of special rates to favored customers and the exaction of unjust and unreasonable rates from the public generally; for if the schedule of rates is filed and published thirty days before the rates become effective, any municipality or a sufficient number of individuals interested, or the Commission on its own motion, may take action to prevent such discriminatory or unreasonable rates from going into effect.  (See Public Service Commissions Law, § 66, subd. 5; Id. §§ 71, 72.)   Pending the proceedings herein subdivision 12 of section 66 and section 72 were amended by chapter 542 of the Laws of 1920, but that amendment does not affect this case.

It was under this latter provision of subdivision 12 of section 66 that the corporation acted in seeking to establish the increased rate now in question, and it says that it took this action to change its rate, relying upon the decision of this court, where a similar increase in a rate was upheld, in *Public Service Commission* v. *Iroquois Natural Gas Co.* (184 App. Div. 285; affd., 226 N. Y. 580).  That case is not an authority for the appellant's position here.  The facts in that case, not fully disclosed in the opinion, were that the gas company had not attempted to file a rate in excess of a pre-existing franchise rate; and the gas corporation had entered into a certain stipulation, the legal effect of which the Commission and the city contended would prevent the filing and collection of a new rate by the gas company..  We held that this stipulation did not apply to the method adopted by the corporation in increasing the rate, and in the absence of

a franchise rate the company could establish a legal rate for its consumers by filing a new schedule as provided by section 66, subdivision 12, of the Public Service Commissions Law.

We hold the same doctrine now. There are two methods provided by that statute by which a gas corporation may increase its rate: *First,* where there is no prohibitory contract or franchise rate, by filing a new schedule of rates as authorized by section 66, subdivision 12, and the rules and regulations of the Commission, and unless this rate is declared invalid by an order of the Commission after hearing, it will stand as the legal rate; *second,* where a maximum rate fixed by contract or franchise exists, which the corporation deems unjust and unreasonable due to a change of conditions from the time when the rate was agreed upon, the corporation may make complaint to the Commission under the provisions of section 71, and when notice is given to those affected thereby and after a hearing and investigation by the Commission, as provided in section 72, the Commission may abrogate the contract rate by its order, giving the corporation the rate to which it may be entitled, not exceeding a rate fixed by statute.

A gas corporation, when duly permitted to do business in this State, may elect originally whether it will do business without special contracts under an established schedule of rates, reserving the right given by law to make changes therein as the conditions demand; or whether it will make contracts for a resale of its product, or an agreement by franchise to sell to a municipality and its citizens at a fixed rate, receiving as a consideration privileges granted it by the municipality. If it chooses the latter course and the rates fixed are not discriminatory, it has bound itself as firmly as individuals can bind themselves in making contracts, with this exception, the State itself may relieve either party to the contract from the obligation to pay or to receive a fixed rate, if the rate is unjust and unreasonable.

This control by the State over contracts of this nature exists by virtue of its reserved police power. The State through the Legislature may regulate rates and the means of service of public utilities and intervene in contracts for furnishing transportation, light, heat, power or other public service. It may say whether the contract rate is unjust or unreasonable,

and modify or adjust the terms of the contract in the public interest.   The exercise of this power is an act of sovereignty and very largely this power by statute has been delegated to the Public Service Commissions.   Such legislation does not violate the constitutional inhibition (U. S. Const. art. 1, § 10, subd. 1), that the obligation of contracts may not be impaired, for contracts of this nature are made ordinarily in contemplation that the State possesses the power to regulate rates and may at any time exercise it.   These principles are so well known and established that it is no longer necessary to cite authority. But the State has not delegated and could not delegate to a private person or to a public service corporation the right to declare invalid or to modify contracts because they were unprofitable, or for any other reason.   In regulating the method by which a gas corporation may change its rate to its customers when it is not restricted by any contract or franchise, the State does not thereby impart to the corporation its own police power.

The gas corporation may not legally assume to be vested with the rate-making power and to be the arbiter of the adequacy and reasonableness of its rates.   It may not assume power to decide these questions in its own favor and proceed to abrogate the contract whose benefit it has long enjoyed. It may not, of its own motion, say that it will no longer be bound by a contract because it has become unprofitable. The courts even will not relieve parties from hard bargains simply because they are such.   (*Columbus Railway & Power Co.* v. *Columbus,* 249 U. S. 399.)

The gas corporation has the same right to ask modification of the contract in the public interest that the municipality would have, if the physical property and apparatus used by the corporation became insufficient or dangerous to health, or if the rates in the course of time became exorbitant and unreasonable — the right to appeal to the sovereign State or to its delegated agent having dominion over such matters. The corporation has no greater right than the municipality to determine for itself the merits of such a disputed question. (See opinion of Crane, J., in *People ex rel. Village of South Glens Falls* v. *Public Service Commission,* 225 N. Y. 216, 222.)

The question we have been called upon to decide has already

been determined in the Second Department and we agree in the conclusions reached by KELLY, J., in *Town of North Hempstead* v. *Public Service Corporation* (193 App. Div. 224). The same conclusion has been arrived at in several cases at Special Term. (See *Village of Mt. Morris* v. *Pavilion Natural Gas Co.*, 183 N. Y. Supp. 792; *Village of Warsaw* v. *Pavilion Natural Gas Co.*, 184 id. 327, 329; *Village of Freeport* v. *Nassau & Suffolk Lighting Co.*, 111 Misc. Rep. 671.)

For the reasons stated the order appealed from must be affirmed, with costs.

All concur.

Order affirmed, with ten dollars costs and disbursements.