FRANK M. CLUTE, Plaintiff, *v.* NASSAU AND SUFFOLK LIGHTING COMPANY, Defendant.

THE GARDEN CITY COMPANY, Plaintiff, *v.* NASSAU AND SUFFOLK LIGHTING COMPANY, Defendant.

Supreme Court, Nassau County, May, 1922.

**Public service corporations — contracts with individual subject to power of public service commission to fix rates — injunction does not lie to prevent increase of rate.**

A contract between a gas company and a private individual though entered into prior to the delegation by the state to the public service commission of the power to fix gas rates is subject to the exercise of that power at such time as the state may determine.

By a contract under seal made in September, 1907, with the Garden City Estates and also by another contract made in December, 1909, with the plaintiff, the Garden City Company, the defendant agreed to supply gas to these companies, engaged in real estate development, and to the purchasers of lots in the sections owned by them. Each of said contracts provided: " The Lighting Company shall furnish all consumers along the lines of said mains, gas meters, and shall supply sufficient gas for all purposes to all persons desiring the same, at rates and charges never exceeding the rates and charges imposed by the Lighting Company for gas supplied by it to consumers within the town of Hempstead (except the village of Freeport) and North Hempstead and in no event exceeding one dollar and a half per thousand feet." The public service commission on July 6, 1921, made an order authorizing the defendant to collect from all its customers a sum in excess of one dollar and seventy-five cents as provided by its amended schedule filed in January, 1920. *Held*, that the complaint in an action by one of the realty companies to enjoin the collection of any rate in excess of the amount fixed by the contract and a like complaint by one of the purchasers of a lot from the other realty company, will be dismissed.

MOTIONS by defendant to dismiss complaints.

*C. Walter Randall*, for plaintiff.

*Randall J. LeBoeuf* (*Luke D. Stapleton*, of counsel), for defendant.

MACCRATE, J.   In September, 1907, the defendant entered into a written contract with the Garden City Estates. In December, 1909, it entered into a written contract with the plaintiff, The Garden City Company. In both contracts the defendant undertook to supply gas to these companies, engaged in real estate development, and to the purchasers of lots in the sections owned by them.

Each contract contained a provision as follows: " The Lighting Company shall furnish all consumers along the lines of said mains, gas meters, and shall supply sufficient gas for all purposes to all persons desiring the same, at rates and charges never exceeding the rates and charges imposed by the Lighting Company for gas

supplied by it to consumers within the town of Hempstead (except the village of Freeport) and North Hempstead and in no event exceeding one dollar and a half per thousand feet."

The plaintiff Clute is one of the purchasers from the Garden City Estates.

The defendant claims the right to collect more than one dollar and fifty cents per 1,000 cubic feet, because in January, 1920, it filed amended schedules fixing one dollar and seventy-five cents per 1,000 cubic feet, and otherwise complied with the provisions of subdivision 12 of section 66 of the Public Service Commission Law, and because, on January 6, 1921, after hearing complaints, the public service commission made an order authorizing it to collect from all its customers a sum in excess of one dollar and seventy-five cents as provided by the amended schedules filed as aforesaid.

The plaintiffs seek to enjoin the collection of any rate in advance of the amount fixed by the contracts. Moreover, they contend that the order of January 6, 1921, is not, in any event, binding on them, because the village of Garden City was not one of the villages represented before the commission, and because it was not named in the proceeding in which the order was made.

However, under the provisions of subdivision 5 of section 66 of the Public Service Commission Law, the commission has power, with or without complaint, to fix rates, and since the order of January 6, 1921, includes all the customers of the defendant, it will bind these plaintiffs, provided the rate of one dollar and fifty cents fixed by the contracts is not unalterable.

There is, therefore, presented the question: Is a contract entered into between a gas company and a private individual, prior to the grant by the state to the public service commission of the power to fix gas rates, exempt from the exercise of that power.

For the purposes of this decision, we will assume, notwithstanding the contract is under seal, that the plaintiff Clute has the same right to enforce the contract as the Garden City Estates.

It is suggested, but not decided, in the case of *People ex rel. Vil. of S. Glens Falls* v. *P. S. Comm.*, 225 N. Y. 216, 221, that contracts such as are herein involved are protected by the State and Federal Constitutions. But in the case of *Union Dry Goods Co.* v. *Georgia P. S. Corp.*, 248 U. S. 372, decided in the same month as *People ex rel. Vil. of S. Glens Falls* v. *P. S. Comm.*, *supra*, the Supreme Court of the United States held that the Federal Constitution presented no barrier to the exercise of the police power of the state, even though the exercise of such power modified contracts between private individuals. Thereafter, although

not necessary to its decision, in the case of *People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356, 359, the opinion of the Supreme Court of the United States was quoted with approval. In addition, the Court of Appeals said: " The question soon arose whether the new rule [regulation by commission] was retroactive, and annulled existing contracts in conflict with its terms. Indisputably it annulled such contracts between carriers and passengers, or carriers and shippers."

We are not confronted with the constitutional provision involved in *Matter of Quinby* v. *Public Service Comm.*, 223 N. Y. 244. Moreover, that case decided only, even if the state had power to regulate rates fixed by municipalities as a condition for the use of their streets by railroads, that power had not then been granted unequivocally to the public service commission. But it has since been determined, in *People ex rel. Vil. of S. Glens Falls* v. *P. S. Comm., supra,* that the state has granted to the public service commission full power to regulate gas rates.

In view of the determination by the Supreme Court of the United States that the Federal Constitution interposes no barrier to the exercise by the state of its power of rate regulation where private contracts are concerned, there remains only the possibility suggested in the *Glens Falls* case of a barrier by our State Constitution.

When the nature of the power is considered, it is difficult to see why a different conclusion should be reached as to private contracts than was reached in the *Glens Falls* case as to stipulations in municipal consents. The power of rate regulation adheres to the state as part of its general police power. When the defendant gas company organized, it entered into a business of a public character by permission of the state. It was that business which immediately subjected it to the possibility of an exercise by the state of the police power. Whether municipalities or private individuals or corporations were its customers, the defendant was engaged in meeting a public need. Gas was the subject-matter of all the contracts. Even the state could not contract away nor abandon its police power, the exercise of which might become necessary to more effectually serve the public need. How, then, can any of them claim the power to partially destroy it by their contracts, to which the state is not a party? It has been held (*Town of North Hempstead* v. *P. S. Corp.*, 231 N. Y. 447) that the statute creating the commission forms part of franchises subsequent to its enactment. If all gas contracts subsequent to the delegation of the power to an agent of the state must be held to be made with knowledge of and subject to that delegation, we

are constrained to hold that gas contracts prior thereto are made with knowledge of the existence of the power in the state itself — and are subject to the exercise thereof at such time as the state may determine.

Complaints dismissed.

Judgments accordingly.