## SECOND DEPARTMENT, MARCH, 1972

## (March 3, 1972)

■ MORTIMER G. LEVINE et al., Respondents, v. LONG ISLAND RAIL ROAD COMPANY et al., Appellants.— In a class action for a declaratory judgment and related relief, defendants appeal from a judgment of the Supreme Court, Nassau County, entered March 1, 1972, which (1) declared, inter alia, that unused 10-trip tickets or unused portions thereof sold by defendant Long Island Rail Road (hereinafter called LIRR) in respect of which the time limit imprinted thereon has not expired are valid and existing contracts; (2) enjoined said defendant from refusing to honor such tickets after March 1, 1972 and (3) denied defendants' cross motion to dismiss the complaint.

Judgment modified, on the law, by (1) striking therefrom all the decretal paragraphs, except the third, which denied the cross motion to dismiss the complaint, and (2) providing, in lieu thereof that it is adjudged that (a) the portion of the fare scheduled promulgated by defendants on January 21, 1972 which declared that 10-trip tickets issued prior thereto would be honored only until midnight of March 1, 1972, after which refunds on unused tickets would be made on a pro rata basis reflecting the number of unused trips is valid and constitutional and (b) plaintiffs have no right to use previously purchased 10-trip tickets henceforth. As so modified, judgment affirmed, without costs. The 10-trip tickets issued by LIRR bear the legend "Good for use * * * within One Year in addition to date of sale stamped on back." This action was commenced in an effort to obtain a declaration that it was beyond the power of defendant Metropolitan Transportation Authority (hereinafter called MTA) to adopt a passenger fare tariff which provided, *inter alia*, that such tickets would not be honored beyond a certain date (March 1, 1972), after which date refunds would be made for unused portions of the ticket. Certain of the undisputed facts appear in the opinion at Special Term. LIRR, since January 20, 1966, has been a wholly-owned subsidiary of MTA. On December 30, 1971, LIRR's president reported a projected operating deficit of $52,000,000 for 1972. This deficit could be reduced to $10,400,000 if certain "save-the-fare" bills now pending before the State Legislature be adopted. LIRR requested of MTA certain fare increases and the discontinuance of the 10-trip ticket. MTA held public hearings on the requested fare changes on January 17, 1972. On January 21, 1972 it announced a fare restructuring plan which honored the 10-trip ticket only until midnight, March 1, 1972. It found that the 10-trip ticket was difficult to administer, that it had been abused and that it is costly to the railroad's revenues. There is obviously a justiciable controversy before us and it is one which should be determined in this action. It would be unthinkable to relegate purchasers of these tickets to an action at law for damages. MTA was established by the Metropolitan Transportation Act (Public Authorities Law, tit. 11, § 1260 *et seq.*) and is a public benefit corporation vested with the power to establish fares (Public Authorities Law, § 1266, subd. 3). In this regard, the jurisdiction, powers and duties of the Public Service Commission have been extended to MTA. Indeed, we have held that the Legislature intended MTA and LIRR to be wholly exempt from Public Service Commission supervision and regulation in the performance of their functions under the Metropolitan Transportation Authority Act (*Long Is. R. R. Co.* v. *Public Serv. Comm. of State of N. Y.*, 30 A D 2d 409, affd. 23 N Y 2d 852). Hence, MTA has, in effect, succeeded to the powers of the Public Service Commission with regard to the fare structure of LIRR (See Public Authorities Law, § 1266, subd. 8). MTA has statutory authority to regulate and change the fare structure. Leaving aside for the moment the issue of impairment of contract, did it properly exercise that power in this case with regard to the public hearing? Subdivision 3 of section 1266 of the Public Authorities Law provides in part: "Any such fares, tolls, rentals, rates, charges or other fees for the transportation of passengers shall be established and changed only if approved by resolution of the authority adopted by not less than a majority of the whole number of members of the authority then in office and only after a public hearing." Plaintiffs contend that the hearing was held to consider a proposal to, in effect, discontinue future sale of the 10-trip ticket and that a new hearing must be held before MTA may change its tariff schedule so as to dishonor previously sold tickets. The rule in this regard was recently succinctly set

forth in *Matter of Tinsley* v. *Monserrat* (26 N Y 2d 110, 114). In determining whether a new public hearing was required for a tentative districting plan adopted by the interim Board of Education, the court noted that a new hearing was not necessary if the plan adopted was derived from and bore some reasonable resemblance to the one initially proposed. In *Tinsley* the board, the proposer of the plan, was also the body which adopted it. That distinction is not crucial. The point at issue here is the public's opportunity to appear at a statutorily mandated hearing prior to the adoption of a proposal. The tariff schedule adopted by MTA clearly bears a reasonable relationship to, and is derived from, LIRR's proposal. LIRR, faced with a fiscal crisis, requested MTA to discontinue the 10-trip ticket. After the public hearing held on that proposal MTA announced a date, 40 days hence, from which time previously sold 10-trip tickets would not be honored. It also announced that tickets for unused trips would be redeemed on a pro rata basis after March 1, 1972. The adoption of this plan, based upon the previously noted findings (that the 10-trip ticket was costly, difficult to administer and subject to abuse), was clearly within the contemplation of the proposal. MTA's action is not an unconstitutional impairment of the obligation of contracts (U. S. Const., art. I, § 10). In the leading case of *Union Dry Goods Co.* v. *Georgia Public Serv. Corp.* (248 U. S. 372) the parties contracted for a five-year supply of light and electric power from the Georgia Public Service Corp. to Union Dry Goods at stipulated rates. After two years, rates charged were raised by order of the Georgia Railroad Commission after an investigation and hearing. The Supreme Court concluded that "the right of private contract must yield to the exigencies of the public welfare when determined in an appropriate manner by the authority of the State" (p. 377). The right of the State to alter a rate or fare schedule is inherent and contracts at certain rates or fares are made subject to this power to change the terms of the contract (cf. *Jones* v. *Rochester Tr. Corp.*, 92 N. Y. S. 2d 735, affd. 277 App. Div. 939; *Clute* v. *Nassau & Suffolk Light Co.*, 118 Misc. 630). Indeed, all private contracts are made subject to this protective power of the State to act in the public interest (cf. *Home Bldg. & Loan Assn.* v. *Blaisdell*, 290 U. S. 398, 438; *Matter of Department of Bldgs. of City of N. Y.* [*Philco Realty Corp.*], 14 N Y 2d 291, 297–298; *Guttag* v. *Shatzkin*, 230 N. Y. 647, 650). If this inherent right of the State may be waived at all, such a waiver would require more than the mere notation on the back of a ticket that it is good for one year. To hold that such a notation barred the exercise of the State's inherent power to alter existing rate schedules would be to deny that the State possesses such inherent power. Plaintiffs note that this is not a case in which a regulatory agency is altering a contract made by an independent utility. Instead, MTA is altering the contract of its own subsidiary. We can sympathize with the contention of plaintiffs that MTA, which is really the owner of LIRR, is in effect regulating itself to the extent of abrogating a pre-existing contract. But the wisdom of permitting such a procedure is a question which must be addressed to the Legislature. We must and therefore do take the law as we find it. The Legislature has given MTA that authority with regard to railroad tariffs previously exercised by the Public Service Commission. The Legislature was, we must assume, cognizant of this feature of the legislation. We are here dealing with the inherent power of the State to alter fares. Insofar as plaintiffs are concerned it does not matter whether this power is exercised through the Public Service Commission or through MTA. A denial of the power to MTA to alter its subsidiary's tariff schedule would seriously impair the effect of the Metropolitan

Transportation Authority Act and freeze the power of the State to adjust fares in the face of a fiscal crisis. As this is an action for a declaratory judgment, we may not dismiss the complaint, but instead must make a declaration of the rights of the parties with respect to the subject matter of the litigation (*Lanza* v. *Wagner*, 11 N Y 2d 317, 334; *Cohen* v. *Hockfeld*, 36 A D 2d 630; *Einbinder* v. *Ancowitz*, 38 A D 2d 721). Latham, Acting P. J., Shapiro, Gulotta, Brennan and Benjamin, JJ., concur.