OPINION OF THE COURT
John S. Lockman, J.
This motion by petitioners for declaratory judgment is denied. Their application for a temporary restraining order has been previously denied.
Petitioners appear pro se seeking a declaratory judgment invalidating certain fare increases adopted by the Metropolitan Transportation Authority (MTA) and its subsidiaries, the Long Island Rail Road Corporation (LIRR) and the New York City Transportation Authority (TA). They contend that the fare increases are illegal by virtue of the *1028 respondents’ failure to comply with section 96 of the Transportation Law which requires common carriers to provide safe and adequate service. They also contend that the procedures followed in adopting the fare increases were improper in that respondents failed to comply with section 84 of the Transportation Law and 17 NYCRR (Transportation) Part 600.
Respondents contend that petitioners lack standing to challenge these fare increases citing, inter alia, Glen v Rockefeller (61 Misc 2d 942, 944, affd on opn below 34 AD2d 930); “It has long been the established law of this State that, where, as here, the wrong complained of is, in fact a ‘public injury’, and the right violated is a ‘public right’, no private person (or number of persons) can maintain an action for an injunction, or for any other relief, unless he suffers a special injury different from that suffered by the public at large”. Petitioners argue that they have suffered special injury by virtue of their status as commuters and passengers on the various transportation facilities operated by respondents. This argument ignores the policy underlying the rule and therefor misses the point. “There is one recurrent theme: the court as a policy matter, even apart from principles of subject matter jurisdiction, will abstain from venturing into areas if it is ill-equipped to undertake the responsibility and other branches of government are far more suited to the task.” (Jones v Beame, 45 NY2d 402, 408-409.)
The courts are certainly ill-equipped to run a railroad and the Legislature has recognized this fact by exempting the MTA from the Transportation Law. “The jurisdiction, supervision, powers and duties of the department of transportation of the state under the transportation law shall not extend to the authority in the exercise of any of its powers under this title.” (Public Authorities Law, § 1266, subd 8; emphasis supplied.) Not only is the MTA exempt from the Transportation Law provisions with regard to fares, but the MTA’s enabling statute itself specifically governs the rate fixing function. “Such fares, tolls, rentals, rates, charges and other fees shall be established as may in the judgment of the authority be necessary to maintain the combined operations of the authority and its subsidiary *1029 corporations on a self-sustaining basis.” (Public Authorities Law, § 1266, subd 3.) Therefore, this court holds that the petitioners lack standing to challenge the determination by the MTA that a fare increase was economically necessary. (Levine v Long Is. R.R. Co., 38 AD2d 936, affd 30 NY2d 907.)
The fact that the determination by the MTA that a fare increase is an economic necessity and the exemption of the MTA from the provisions of the Transportation Law do not place respondents beyond all challenge, however. The old rule relied on reluctantly in Glen v Rockefeller (supra) which precluded all citizen-action suits absent special and peculiar injury has been abrogated by the enactment of article 7-A of the State Finance Law which authorizes citizen taxpayers to challenge alleged wrongful expenditures of State funds whether or not they are specially aggrieved. (State Finance Law, § 123-b, subd 1.) The courts have increasingly recognized that, “If the requirement of standing is given a narrow construction when there is involved constitutional or important statutory rights or misfeasance or nonfeasance of public officials, then there is, in effect, no practical remedy for anyone with an interest in enforcing the right — and the right becomes but a mockery.” (3 Weinstein-Korn-Miller, NY Civ Prac, par 3001.04.) Thus, in Kessel v Long Is. R.R. Corp. (Supreme Ct, Nassau County, Sept. 18, 1980), Justice Spatt of this court held that the MTA was required to comply with the State Environmental Conservation Law before eliminating an experimental off-peak fare because of the environmental impact of such an action. By such decisions the courts are not interjecting themselves into executive, legislative or administrative decision making. Rather they are merely insuring that officials and administrative bodies abide by the procedural safeguards which have been developed to protect the citizenry. Petitioners then have standing insofar as they contend that the notice of the public hearing when compared with the fare increase ultimately adopted was defective.
Petitioners contend that the public hearing notice of the hearing required by subdivision 3 of section 1266 of the Public Authorities Law was overly broad and defective in *1030 that it stated a broad range for the contemplated fare hike§v The notice indicated that the fare on the TA would be increased up to 40 cents one way and that the fare on the Long Island Rail Road and Conrail would be increased up to 50%. Additional proposed changes in special fares and zone fares were also set forth. In fact, the TA fare was increased 15 cents and the average LIRR fare by 20 to 25%. All that the law requires is that, “The plan finally adopted * * * must be derived from, and bear some reasonable'resemblance to, the one initially proposed.” (Matter of Tinsley v Monserrat, 26 NY2d 110, 114; Levine v Long Is. R.R. Co., 38 AD2d 936, affd 30 NY2d 907.) The notice published by the respondents when compared to the action ultimately taken meets this standard.
The petitioners contend that in the action of the respondents in having the fare increases on the TA and the LIRR and Conrail take effect on different dates constituted a denial of equal protection. It should suffice to note that the differences in the manner in which fares are collected (tokens as opposed to commutation tickets) and the manner in which sales are made (daily sale of tokens in contrast to weekly and monthly commutation tickets some of which are mailed in advance) adequately explain these decisions.