OPINION OF THE COURT
Margaret Taylor, J.
This is an action brought to compel the Triborough Bridge and Tunnel Authority (TBTA) to accept toll tickets purchased for .75 cents prior to May 19, 1980 for passage across several of its facilities. It comes before this court on TBTA’s motion to dismiss the complaint for failure to state a claim pursuant to CPLR 3211.
The undisputed facts are as follows: plaintiff bought toll tickets at TBTA’s administrative office prior to May 19, 1980. On the face of the tickets immediately underneath TBTA’s name is written: “Good For Passage of Motor Vehicle”; below that the symbol “.75” is printed. Nothing is printed on the back of the ticket nor is an expiration date indicated. TBTA raised its toll fares at the Triborough, Bronx-Whitestone and Throgs Neck Bridges and at the Queens Midtown and Brooklyn Battery Tunnels from .75 cents to $1 effective May 19, 1980. Named plaintiff claims to have presented these toll tickets at one of these facilities and to have -been informed by an agent of TBTA that he would have to pay an additional .25 cents to cross the bridge.
*232 Plaintiff asserts that pursuant to his purchase of a book of these toll tickets, TETA became contractually obligated to provide a fixed number of trips across its facilities. He urges that TETA be estopped from disavowing this contractual obligation. TETA denies there was a contract for passage.
TETA maintains that the number bespeaks the amount of the purchase and that the words merely describe the use to which this purchase may be put, that is, what has been bought is merely .75 cents worth of a claim or credit to be applied toward payment of a toll. Thus, when the toll is .75 cents no additional sum need be paid; when the toll exceeds .75 cents the ticket must be supplemented by the difference in cash.
Plaintiff contends that the words promise passage of a vehicle and that the number specifies the price to be paid for that passage. That the words precede the number supports this reading. This position is further bolstered by the pre-May 19 toll-rate schedule that charts the price of passage for particular bridges and tunnels depending on the type of the vehicle and by the fact that tickets were sold in denominations corresponding to the various toll rates on the chart. In addition, to the extent that the compound message on the ticket is open to divergent interpretations, that ambiguity should be construed against its maker, TETA. (67 Wall St. Co. v Franklin Nat. Bank, 37 NY2d 245.)
TBTA’s attempt to support its interpretation by citing what is common practice among commercial trucking operators is not dispositive. Whether a sophisticated commercial entity (for whom toll paying is part of its daily business) understood that the tickets represented only a .75 cent payment toward passage is not the litmus test here. The issue is whether a reasonably sophisticated passenger car commuter, such as plaintiff was unreasonable in being misled.
Laws proscribing misleading advertising and deceptive sales practices are designed to protect not only the average customer but also “the ignorant, the unthinking, and the credulous, who, in making purchases, do not stop to ana *233 lyze but are governed by appearances and general impressions.” (Floersheim v Weinberger, 346 F Supp 950, 957; Guggenheimer v Ginzburg, 43 NY2d 268, 273; People v Volkswagen of Amer., 47 AD2d 868, 869.) Similarly, throughout the law of sales, standards of conduct and standards by which a contract clause is judged differ considerably depending on whether the transaction is between merchants or whether a less sophisticated consumer is one of the parties to the bargain. (See, e.g., Uniform Commercial Code, § 2-103, subd [1], par [2]; § 2-104, subd [3]; § 2-302, subd [2]; § 2-719, subd [3].)
Analogously, courts apply different criteria to representations made in connection with the sale of securities to the general public and those made to sophisticated buyers. (Petrites v Bradford & Co., 646 F2d 1033; Berger v Merrill Lynch, Pierce, Fenner & Smith, Federal Securities Law Reporter, par 97,836.)
Applying the standard of the reasonable commuter, this court cannot hold that plaintiff’s interpretation of TBTA’s owrn tickets, schedules and former practice is unreasonable. TBTA was not obliged, either in law or in fact, to make the promise it made. It could have issued tickets bearing only its name and the price paid or a legend such as “good for $.75”. Instead, it chose the words “Good for Passage of Motor Vehicle”. The court agrees with plaintiff’s interpretation and holds that by these words TBTA promised a specific service, passage of a particular vehicle through the appropriate toll booths.
This holding, however, is not dispositive of the issues raised by this motion. Since TBTA has the inherent power to raise toll rates, the further question is whether it should be estopped from reneging on its promise. (See Levine v Long Is. R.R. Co., 38 AD2d 936.) Although estoppel is not readily asserted against a State agency (Matter of Hamptons Hosp. & Med. Center v Moore, 52 NY2d 88), the State may be estopped when a right legally and rightfully obtained would otherwise be defeated or when a party has acted to her/his detriment in reasonable reliance on government conduct. (Bender v New York City Health & Hosps. Corp., 38 NY2d 662; Brennan v New York City Housing Auth., 72 AD2d 410; Gadzella v Neumaier, 67 *234 Misc 2d 585; see La Porto v Village of Philmont, 39 NY2d 7; 21 NY Jur, Estoppel, § 77.)
Plaintiff acted to his detriment in reliance on his reasonable understanding of the bargain offered, and TBTA received the benefit of the bargain it had made. When plaintiff bought his book of tickets, he exchanged the present use of his money for a promise of future service and for the convenience of using tickets rather than cash each time he obtained service. TBTA benefited by gaining the present value and use of the money transferred. The net benefit to TBTA was all the greater in that it offered no discount to purchasers of ticket books and extended no more than convenience as an inducement to buy the books.
Interestingly, commuters who had bought tokens, rather than tickets, were allowed to use their tokens even after the tolls were raised. In an effort to show that the purchase of tickets, unlike the purchase of tokens, was not a prepayment of the toll, TBTA points out that it had offered discounts to buyers of tokens but not to buyers of tickets. To be sure, the use of tickets, unlike the use of tokens, does not allow replacement of toll booth attendants by machines. It does, however, offer a lesser and no less clear advantage: toll booth attendants who are given tickets need not give change. This benefit may not have been sufficient to warrant discounts, but it, plus the present use of the money collected, was clearly sufficient to warrant the additional labor and expense of selling tickets at defendant’s office. There is no need for further economic analysis here. Suffice it to say that in the case of the tickets, as in the case of the tokens, TBTA made its own bargain. It should be held to the one as it has held itself to the other.
There are additional reasons for estopping TBTA from repudiating its bargain. It continued to sell these toll tickets after it had proposed to raise toll rates. Plaintiff bought his tickets several weeks after that proposal was made and less than two weeks before it was to be implemented. Although TBTA fulfilled its legal duty to announce its proposed action and to hold a hearing, it did nothing to bring the imminent fare raise to the specific attention of ticket buyers. A poster in the sales areas or a mimeographed announcement sent with all tickets ordered *235 after the raise was proposed would have sufficed. TBTA did nothing.
TBTA virtually concedes that if its contract with ticket buyers is found to have been for passage rather than for payment toward the toll then it should be estopped from denying passage at the appropriate toll booths in exchange for a .75 cent ticket. In the circumstances of this case, the court agrees. In view of this disposition of the case, it is not necessary to reach plaintiff’s constitutional argument.
TBTA’s motion to dismiss is denied.